UNITED STATES of America, Plaintiff,

v.

**Imad Farah BECHARA, Defendant.**

**Civil Action No. L–96–56.**

United States District Court,
S.D. Texas,
Laredo Division.

May 29, 1996.

Imad Farah Bechara, Laredo, TX, Pro Se.

### MEMORANDUM

KAZEN, District Judge.

Still pending is the Government's motion for an order authorizing medical treatment to assist with the Defendant's deportation. In a April 27, 1996 order, the Court allowed the Defendant and his attorney to respond and both have done so.

This motion continues a long-standing dispute between the Immigration and Naturalization Service and Defendant Bechara. Bechara was ordered deported in July of 1989. He has challenged that order in prior civil proceedings, specifically, Civil Actions Nos. L–95–54 and L–95–79. This Court rejected his challenges and the Fifth Circuit Court of Appeals affirmed.[1] Those files, which are incorporated by reference herein, reveal that the Defendant is an aggravated felon, ineligible for asylum, who has exhausted all legal avenues to avoid deportation. He refuses to go. While the Court has not conducted an evidentiary hearing to record the facts surrounding his refusal, a federal grand jury heard the case and indicted this Defendant for violating 8 U.S.C. § 1252(e). *United States v. Bechara,* Criminal No. L–96–28. In Count One, the grand jury found cause to believe that Bechara intentionally interfered with his deportation by resisting any restraints on his person, causing injury to his person, attempting to cause injury to his person, refusing to enter into a van, and refusing to enter an aircraft. In Count Two, the grand jury charged that the Defendant threatened to damage, destroy, or disable an INS aircraft "by stating he would force the aircraft down by whatever means possible while striking his head against the aircraft's window."

Bechara has not disputed that he has physically resisted deportation, and if he wishes to dispute it now, he can obviously moot the issue by agreeing to be deported. Instead, Bechara continues to argue that he is entitled to stay in this country. He insists that he had an arrangement with an INS official to remain in this country, apparently indefinitely, in return for his cooperation with state narcotics officers in Fort Worth, Texas. The Court has rejected that claim and has been affirmed. Bechara also continues to suggest that his life would be in jeopardy if he returns to Lebanon, but this Court has concluded that, as an aggravated felon, Bechara is ineligible for asylum. Bechara has never furnished any legal reason why that conclusion is incorrect. In a *pro se* filing of May 10, 1996, Bechara invokes a United Nations Convention supposedly prohibiting a nation from expelling a person whose life would be threatened in the process. The Court is unaware of any authority indicating that any such Convention overrules congressional enactments on this subject, nor has Bechara furnished any such authority.

In a recent filing (Docket No. 4), Bechara attaches a copy of a writ of habeas corpus which he says he is "pursuing" in state court. The basis of the writ is that his attorney was ineffective in state court for failing to request a judicial recommendation against deportation under 8 U.S.C. § 1251(b). Defendant's chances of success with this petition are virtually nil. The section in question, which no longer exists, expressly excluded aliens convicted of narcotics violations. Moreover, this was a federal statute and the Court is unaware of any authority suggesting that the statute ever applied to state court proceedings.

Bechara also states that he needs more time to pursue "the possibility of getting a visa to another country." Bechara was ordered deported in July of 1989 and to this day he has not indicated any nation other than Lebanon that would accept him. At a court hearing held on April 18, 1996, this matter was again discussed and while Bechara expressed a willingness to go to any other country, he failed to suggest any country besides the United States and Lebanon to which he had any meaningful ties.

■ Defendant's attorney has also objected to the pending request, claiming that it

---

1. Bechara's appeal of the Court's dismissal of his first habeas petition (No. L–95–54) was dismissed with prejudice by the Fifth Circuit in No. 95–40650. The Court's dismissal of his second habeas petition (No. L–95–79) was affirmed by the Fifth Circuit in No. 95–40737.

would violate Bechara's due process rights under *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). There, the Supreme Court held that a prisoner has a liberty interest against being forcibly medicated with antipsychotic drugs. Therefore, among other things, a finding that the drugs are medically appropriate is necessary before such drugs are administered. The *Harper* opinion, however, specifically noted that the drugs in question were designed to "alter the chemical balance in the brain." *Harper*, 494 U.S. at 214, 110 S.Ct. at 1032. Later, in *Riggins v. Nevada*, 504 U.S. 127, 132, 112 S.Ct. 1810, 1814, 118 L.Ed.2d 479 (1992), the court elaborated that antipsychotic drugs can have serious, even fatal, side effects.

The Court is not contemplating use of antipsychotic drugs in this case,[2] but instead, "less controversial drugs like tranquilizers or sedatives." *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). Sedation admittedly would not be for medical purposes as such, but rather to restrain the Defendant in order to enforce a court order and to ensure the public's safety as well as Bechara's own well-being during the deportation.

The *Harper* opinion stressed that a reasonableness standard should be applied to a challenged prison regulation. It then described factors to be considered in making that determination: first, whether there is a valid, rational connection between the regulation and a legitimate governmental interest; second, the impact on guards, other inmates, and prison resources generally; and, third, the absence of ready alternatives. *Harper*, 494 U.S. at 223, 110 S.Ct. at 1038. Assuming, as Bechara does, that *Harper* would apply to an INS detainee, the Court is convinced that administering noncontroversial sedatives to this Defendant for the limited purpose of enforcing the deportation order would meet the *Harper* test.

■ Even if this issue were analyzed under the "excessive force" approach, the Gov-

ernment's request should be granted. In *Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir.), *cert. denied*, 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993), the court stated that, when called upon to examine the amount of force used on a detainee for the purpose of institutional security, the appropriate analysis is whether force was applied in a good faith effort to maintain or restore discipline, or whether it was done maliciously and sadistically for the purpose of causing harm. *Id.* at 1446. The Government seeks to enforce a valid legal deportation order. It is not seeking to harm Mr. Bechara. On the contrary, it is seeking to avoid harm to him and those around him. Sedation with noncontroversial drugs appears to be the least intrusive way to resolve this dispute.

As the Government has noted in its response, there is a strong congressional policy in favor of prompt deportation of aggravated felons. Bechara has physically resisted deportation even after exhausting all legal remedies. The legal avenues he claims to be pursuing at this stage have no merit. He has threatened danger to himself and others if deported. In the process, he is engaging in criminal activity. Most importantly, neither he nor his attorney offer any legitimate suggestion of what else the INS is supposed to do at this point. Perhaps Bechara could be physically bound and shackled, but this hardly seems to be a more humane alternative. As the Supreme Court stated in *Harper*: "Physical restraints are effective only in the short term, and have serious physical side effects when used on a resisting inmate." *Harper*, 494 U.S. at 226–27, 110 S.Ct. at 1039. If the requested order is not granted, the result presumably would be that Bechara, by the simple expedient of physical resistance, remains above the law and can effectively prevent deportation.

For all the foregoing reasons, the Government's motion shall be GRANTED. The Government will be authorized to administer sedatives for the express and sole purpose of facilitating Bechara's deportation. The Court shall stay enforcement of its order for

---

**2.** The government requests authorization to administer "sedatives or other drugs." (Docket No. 1 at page 1).

30 days to allow Bechara to appeal and obtain, if he can, a further stay from the Fifth Circuit Court of Appeals. In the meanwhile, Bechara is reminded of the obvious, namely, that no sedative or any other measure would be required if he would finally agree to comply with the deportation order.